IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
MAR 28 2019
THOMAS G. BRUTON
CLERK, U.S DISTRICT COURT

| | |
|---|---|
| GEORGE MOORE, | : |
| Plaintiff, | : Case No. |
| v. | : |
| DIAL4MD, INC, EMMANUEL SILVA, FRANCISCO OCASIO JR, and DOES 1 – 10, | : 19CV2162<br>JUDGE KENDALL<br>MAG. JUDGE ROWLAND |
| Defendants. | : |

## COMPLAINT

Plaintiff George Moore states as follows for his complaint against Dial4MD, Inc, Emmanuel Silva, Francisco Ocasio Jr, and Does 1 – 10:

### Preliminary Statement

1. This action arises out of the Defendants' repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. Does 1 through 10 initiated telemarketing calls to the residential telephone number of Plaintiff despite it being registered on the National Do Not Call Registry, to promote Dial4MD, Inc ("Dial4MD") in violation of the TCPA. Dial4MD hired Does 1 through 10 to advertise its goods and services and is vicariously liable for their illegal telemarketing conduct.

3. Mr. Moore never consented to receive these calls, and they were placed to him for telemarketing purposes.

### PARTIES

4. Plaintiff George Moore is a natural person and resident of Illinois in this District.

1

5. Defendant Dial4MD, Inc is a Florida Corporation that has its principal office in Margate, Florida and a registered agent of Emmanuel Silva, 10880 Paper Bark Pl, Boynton Beach, FL 33437.

6. Defendant Emmanuel Silva is a natural person and resident of the State of Florida.

7. He is Dial4MD's president.

8. He is also the owner of a certain other Florida company Sunshine Bracing Solutions, Inc.

9. Defendant Francisco Ocasio Jr is a natural person and resident of the State of Florida.

10. He is Dial4MD's vice president.

11. He is also a manager of a certain other Florida company Superior Health Supplies LLC and is a director of Sunshine Bracing Solutions, Inc.

12. Mr. Silva and Mr. Ocasio are each also a manager of a certain other Florida company Durable Medical Products, LLC.

13. The true names and capacities of the defendants sued herein as Does 1 through 10 are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as Does when such identities become known.

14. The Defendants themselves, and through third parties, place telemarketing calls into this District, or authorized the same, as they did with the Plaintiff.

## JURISDICTION & VENUE

15. The Court has federal question subject matter jurisdiction over these TCPA claims.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

## TCPA BACKGROUND

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

20. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

21. Dial4MD operates a telemedicine physician network called the "Doctor Network".

22. Doctor Network physicians provide, inter alia, consultations and prescriptions for orthotic braces.

23. Sunshine Bracing Solutions, Inc, Superior Health Supplies LLC and Durable Medical Products, LLC are suppliers of durable medical equipment and medical supplies.

24. Dial4MD uses telemarketing to advertise its goods and services.

25. In fact, Dial4MD has advertised the position of "Telesales". *See* https://www.ziprecruiter.com/jobs/dial4md-fc9ebb1c/telesales-6e7a3003 (Last visited February 10, 2019).

26. The job description states, inter alia: "Have you ever seen the movie Boiler Room? Well that is what we are looking for! . . . This agent will focus on reaching out to Medicare patients and collecting PHI. . . ." *Id.*

27. Upon information and belief, Dial4MD's purpose is to generate sales of orthotic braces and other medical supplies for its affiliated companies named above, resulting in profits for defendants Mr. Silva and Mr. Ocasio.

28. Upon information and belief, the Defendants target customers enrolled in certain private or government sponsored health insurance plans such as Medicare, in order to seek reimbursement from the sponsor for the services rendered by Dial4MD's physicians and the goods dispensed by its affiliated companies.

Calls to Mr. Moore

29. Beginning in April 2018, Plaintiff Mr. Moore started receiving repeated telemarketing calls on his residential telephone number (630) 510-XXXX, regarding the availability of orthotic braces.

30. This number has been continuously registered on the National Do Not Call Registry for more than ten years prior to receipt of the calls.

31. When Plaintiff answered the calls, he became connected with representatives who identified their company as "Pain Management Center", "Pain Relief Center" and other similar generic names.

32. The purpose of these calls was to promote Dial4MD's goods and services.

The January 8, 2019 Call

33. On January 8, 2019, the Plaintiff received a telemarketing call on his residential line.

34. When Plaintiff answered, he was informed by the representative that the reason for the call was to check his eligibility to receive new braces for pain he might be experiencing in his back, shoulder or knee.

35. The representative identified his company as "Pain Management Center".

36. The Plaintiff was further informed by the representative that the brace would be paid in full by his insurance with no out-of-pocket cost to him.

37. In order to discover the company's identity, the Plaintiff feigned interest in receiving a back brace and answered the representative's questions.

38. The Plaintiff was asked by the representative for his Medicare member ID.

39. The Plaintiff was next informed by the representative that he would be getting contacted in the following days to finalize the brace order.

The January 15, 2019 Call

40. On January 15, 2019, the Plaintiff received a telemarketing call on his residential line.

41. When Plaintiff answered, he was informed by the representative that the reason for the call was to complete the process of shipping braces to him.

5

42. In order to further investigate, the Plaintiff continued feigning interest and answered the representative's questions.

43. The Plaintiff was asked by the representative for his Medicare number on his "red, white and blue card".

44. Subsequently the Plaintiff became transferred to another representative who identified himself as a verifier from the Doctor Network.

45. The Plaintiff was asked questions by the representative regarding his Medicare insurance coverage.

46. The Plaintiff was next informed by the representative that the final step was for a doctor to call him.

47. The representative proceeded to solicit the Plaintiff to enroll into the Doctor Network, and identified Dial4MD as the company that will provide the services.

48. Plaintiff has been injured by the acts of the Defendants because his privacy has been violated and he was subjected to annoying and harassing calls that constitute a nuisance. Plaintiff was also temporarily deprived of legitimate use of his phone because the phone line was tied up by the illegal calls.

49. Plaintiff did not provide his prior express invitation or permission for the Defendants to place telemarketing calls to him.

### DEFENDANTS' LIABILITY FOR THE TELEMARKETING CALLS

50. Dial4MD is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39).

51. The Federal Communication Commission has instructed that sellers such as Dial4MD may not avoid liability by outsourcing telemarketing:

6

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

52. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.

53. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

54. The parties that made the calls described herein did so "on behalf of" Dial4MD within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

55. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations…that are committed by third-party telemarketers."[1]

56. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

7

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

57. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

58. Dial4MD is legally responsible for ensuring that the parties that made the calls complied with the TCPA, even if Dial4MD did not itself make the calls.

59. Dial4MD knowingly and actively accepted business that originated through the illegal telemarketing calls from the parties that made the calls.

60. Moreover, Dial4MD maintained interim control over the actions of the parties that made the calls.

61. For example, Dial4MD had absolute control over whether, and under what circumstances, it would accept a customer.

62. Furthermore, Dial4MD had day-to-day control over the actions of the parties that made the calls, including the ability to prohibit them from calling phone numbers registered on the National Do Not Call Registry to contact potential customers of Dial4MD.

63. Moreover, Dial4MD instructed the parties that made the calls to transfer the called parties to a third-party verification company Dial4MD had hired to complete the process of enrolling a customer into the Doctor Network.

64. In fact, Dial4MD allowed their vendors to bind them in contract following an illegal telemarketing call, as they did with the Plaintiff.

65. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

Mr. Silva's and Mr. Ocasio's Liability for the Telemarketing Calls

66. At all relevant times, Defendants Mr. Silva and Mr. Ocasio directed the day-to-day activities of Dial4MD as the company's president and vice president, respectively.

67. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

68. Mr. Silva and Mr. Ocasio are each personally liable under the "participation theory" of liability because each of them was a controlling officer of Dial4MD and knew of and authorized the telemarketing conduct that is the subject of this Complaint.

## COUNT I
## VIOLATION OF THE TCPA'S DO NOT CALL PROVISIONS

69. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70. The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's telephone number that is listed on the Do Not Call Registry, or (b) by the fact that

9

others made those calls on their behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

71. The Defendants' violations were willful and/or knowing.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that judgment be awarded in Plaintiff's favor and against the Defendants, jointly and severally, as follows:

A. Because of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(c), treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

B. Because of Defendants' statutory violations of 47 U.S.C. § 227(c), $500 in statutory damages for every call that violated the TCPA;

C. Costs of suit;

D. Leave to amend this Complaint to name Does as they are identified and to conform to the evidence presented at trial;

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

RESPECTFULLY SUBMITTED,

GEORGE MOORE,
Pro Se

DATED: March 27, 2019     By: _____

George Moore
906 Chatham Drive
Carol Stream, IL 60188
Email: gmoore3@att.net
Telephone: (630) 699-3205